The next case today is Philip Ayala v. Nelson Alves. Appeal number 22-1924. Attorney Thornton, please introduce yourself for the record and proceed with argument. Good morning. May it please the Court, I'm Assistant Attorney General Gabriel Thornton for the Respondent Appellant Nelson Alves. I'd like to request two minutes for rebuttal, if I may. You may have two minutes. Thank you. The petitioner is not entitled to habeas relief. The SJC's decision was not based on an unreasonable determination of the facts, and the SJC also reasonably applied Strickland in holding that counsel was not ineffective, turning first to the question of whether the decision was based on an unreasonable determination of the facts. The habeas framework leaves room for reasonable disagreement between state and federal courts. A disagreement on a judgment call does not amount to an adequate showing that a state court's fact-finding was unreasonable. Okay, before you proceed down that line, what specifically in the district court opinion granting habeas are you pointing to? Tie it to the facts of the case. Don't just make abstract arguments. Yes, Your Honor. There are specifically two determinations in the SJC's decision upon which the district court focuses. Both of those determinations come from the same paragraph of the SJC's opinion. And what we would like this court to do is to focus on that paragraph as a whole, not just to focus on that first sentence of the paragraph, which could have and probably should have been phrased better, but in looking at that first sentence as a topic sentence. Would you read us the paragraph, please? Yes, Your Honor. Notably, there was no evidence either introduced at trial or contained within the missing records that suggests that Perez's mental health struggles or drug use affected his ability to perceive the defendant on the morning of the shooting. For example, a defense expert's proffered testimony only acknowledged that Perez's mental health struggles have the potential to and may have interfered with Mr. Perez's abilities to accurately perceive or recollect the shooting. Trial counsel argued this point specifically during closing, stating that Perez's diagnoses are difficult illnesses and they may impact his ability to see and conceptualize what was actually happening. Additionally, although the missing records suggested that Perez was more dependent on marijuana than his testimony led on, there was no evidence that he was under the influence of marijuana on the morning of the shooting. The defendant's proffered expert on this point would not have materially added to the defense, as he was prepared only to testify that individuals have a reduced ability to accurately perceive reality and recall past events while under the influence of mind-altering substances. Because the substance of the missing records and proffered expert testimony was already presented to the jury, any error on the part of trial counsel in failing to notice the missing records was not likely to influence the jury's conclusion. There has been a citation, and the last sentence of the paragraph is, the motion judged, therefore, did not err in denying the defendant's motion for a new trial. Okay, and what did the district court say was an error as to that paragraph from the SJC? It would be the first sentence and the next to last sentence, Your Honor. So the first sentence is, notably, there was no evidence either introduced at trial or contained within the missing records. Five minutes remaining. Five minutes. The witness's mental health struggles or drug use affected his ability to perceive the defendant on the morning of the shooting. And then the other factual determination was, because the substance of the missing records and proffered expert testimony was already presented to the jury, any error on the part of trial counsel in failing to notice the missing records was not likely to influence the jury's conclusion. Okay, as to the first sentence, wasn't it accurate? Which is to say, nothing in those, I think it was 36 pages of the actual counseling notes with the therapist established to any certainty that the PTSD at the time that he witnessed the shooting would have, in fact, affected his ability to perceive who the shooter was. Yes, Your Honor, there was nothing in those, I believe it was 38 pages of records, about his diagnoses at all, I believe. In any event, the jury didn't see the content of those records. The jury did hear about the diagnoses. Isn't the problem with that first sentence, if there is a problem, with the verb choice that the SJC made? There is nothing in the evidence, as Judge Lynch said, that establishes any of those things. But to say that the evidence doesn't suggest them, it seems to me to be a bit problematic. I agree, Your Honor, that it's problematic. I think when this court looks at the paragraph as a whole, as it should, it can read that sentence to say there's nothing in the missing records or proffered expert testimony that necessarily suggests, but the verb choice itself is problematic. And it has to be understood in the context of the second sentence, which is under attack, which is there was already evidence before the jury about his PTSD, and so nothing in the new records suggested anything beyond what was already in evidence. That's correct, Your Honor. Okay. Was there anything in those psychological records that directly contradicted what was already discussed at trial? No. No. In the later produced records, it all would have supplemented that to which the witness testified about his mental illnesses and his marijuana use. I didn't understand. Well, do you understand the petition to be pursuing the marijuana use? I thought that had pretty much dropped out of the case, but perhaps it hasn't. It's unclear, Your Honor. I believe that it does to some extent because the specific factual determinations here that the district court found to be wrong do at least touch on the marijuana use. The way that the SJC deals with it is correct because there was no evidence before the jury that the witness had used marijuana that evening, but the profit expert testimony does talk about a marijuana use disorder, the potential effects of the marijuana use disorder on the percipient and recall abilities of the witness. It's a relatively minor issue, but it is there. Okay. Thank you. You're welcome. Are there other factual errors asserted by the district court, or are we now ready to move to the unreasonable application of law? We are ready to move to the unreasonable application, Your Honor. Those are the two factual determinations that the district court determined were wrong. Is that time? Please finish answering the question. I was just going to say, in looking at the reasonable application of Strickland, I remind the court, as it knows, that a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or the jury. Thank you. Judge Lynch, did you have another question? No. Thank you. Thank you, counsel. At this time, would Attorney Pumphrey please unmute her device and introduce herself on the record to begin? Good morning. May it please the court, Janet Pumphrey for the appellee. The district court used very strong language in these two unreasonable findings of fact. The district court strongly suggested that no reasonable person reviewing the record could agree with these two findings of fact. The district court stated that the SJC's finding of no evidence is contradicted by a wealth of evidence in the psychological records, and in light of that evidence is patently unreasonable. Strong, strong language by the district court. Well, it may be strong language, but what we've got to do is test what its basis is. And it seems to me that if we give the SJC the benefit of treating that word suggests in the first of the two sentences as merely imprecise language, that what the court really meant was necessarily suggests or establishes something like that, which in context seems fair, right? That there is no evidence that establishes it. The most favorable evidence that I'm aware of to the petitioner is evidence that says that the PTSD had the potential to affect his actions or bring about his actions. Not that it actually contributed in any way. Am I wrong about that? Well, as I said in my brief, I think that it would be impossible to say that it absolutely affected. But the experts said it really contributed, had the capacity to, and may have interfered. May have and had the potential to. That's right, that's right. Okay, so Judge Selye's statement is correct, correct? It is correct, it is correct. But if I could go to Judge Lynch's question before, Perez's, this is what the expert testified to. Perez's long history of heavy marijuana use reduced his ability, not may have, but did reduce his ability to accurately perceive and recall past events. And both borderline personality disorder and a PTSD involve difficulty relating emotions and dealing with stress. So I think if you take that, that one finding that the expert testified to, and combine it with the identification expert, which is not the issue here, but the identification expert who testified post-trial, so basically under high stress, the accuracy of witness identification declines. The shorter the period of time the witness actually sees the perpetrator, and here it was the muzzle flash. Counsel, excuse me, but I thought the habeas case actually is not focused on that eyewitness identification testimony, but on the missing records. So why are you moving to a topic which is not before us? Well, you're absolutely correct, but I thought it was interesting to combine the two together. And I think it really bolsters the honest but mistaken defense and makes it much stronger. I guess the worst part about this is that the superior court limited Perez to his own understanding of his symptoms, and whether he still suffered from PTSD or suffered from PTSD at the time of the shooting. And his own self-evaluation left the jury not only without the benefit of the entire record, the kind of contradictory information, but it also, he misled the jury. I don't think it was purposeful, but he misled the jury. He said his PTSD didn't affect him, it was under control. His PTSD had only a minimal effect. He was just like a remembered bad time, a bad dream. It was just really downplayed. I'm sorry, who is the he? Oh, this is what Perez said about himself when he talked about in his testimony. He really misled the jury in terms of his psychological impairments. So not having the psychological records prevented the defense counsel from the ability to refute any of this testimony. No, no, no, no, no. The defense counsel had ample psychiatric records, had hundreds of pages, of which there were records establishing that he had PTSD. What was not turned over initially, oh, and marijuana abuse. What was not turned over was merely 38 pages, which were mostly the counseling records, both before and after the shooting, correct? No, defense counsel didn't have the hundreds of pages of the in-depth psychological records. There are not, excuse me. We've been through the records. I thought what was missing may be hundreds of records, hundreds of pages, but only 38 pages of those are actual records of the psychiatric counseling. The records by the three therapists he saw over the years. Isn't that correct? Well, the hundreds of pages were the many, many, many records of the therapists that he saw over the years. Four minutes remaining, four minutes. Okay. Thank you. Thank you. So let's see. Shall I go on to the substance of the records? The substance of these records was not before the jury. They needed the records themselves to understand the overlap between the PTSD and what happened to him in Germany and also this shooting event. Should I go on to the unreasonable application of Strickland? Sure. Sure. There's no other evidence of Mr. Ayala's guilt. There's no physical evidence that connects him to the shooting. There's no other witnesses that connected him, no evidence that he even knew the victim. There's no evidence of a relationship between them, no evidence of motive, and no evidence of any prior contact between them. His identification description completely changed from what he told the police at the time of the shooting to what he testified to at trial. He went from six feet, six feet one to completely different what he told the jury at trial. In his description he gave to the police that night, he said that Ayala was wearing a matching coat and pants set. By the time of trial, he had changed that to a T-shirt with a skull on it and shorts. Those are completely different outfits. The defense expert testified that Ayala was not at the scene. She watched Ayala get in a tan Jeep Cherokee and drive down Wilberham Road  I guess what I keep coming back to though is, why was it unreasonable for the SJC to conclude that given counsel's statements during closing and given the evidence of PTSD that was in the record, why was it unreasonable for the SJC to say this additional evidence was not likely to sway the jury? Isn't that what you need to answer? Exactly, exactly. I think what I'm going through right now, there was no other evidence that Mr. Ayala was even present at the time of the shooting. Without the psychological evidence, the defense counsel had no grounds to effectively argue his motion for expert testimony which the trial court found at the time was without foundation. So in conclusion, in a case where there's absolutely no other identifying Ayala as the shooter, the introduction of the missing psychological records would have altered the entire evidentiary picture before the court and resulting in a probable finding that at least one jury would have found reasonable doubt. Can I just go back to my question though in terms of the prejudice prong? Is it wrong for us to look at counsel's statements during the closing argument and the evidence of PTSD that was already in the record when we're thinking about prejudice? It's not wrong, but I would argue that the defense's closing argument is not evidence. And the evidence of PTSD that came from Perez, which was believed by the jury, was really downplayed. There was so much more in the psychological records that the defense could have used. Okay. The SJC makes a point of saying that the defense did present another witness who said, your client, Ayala, could not have done it. And that the strategy was to present that and to say as to this veteran with honorable service with PTSD that he made an honest mistake, but not to try to eviscerate that witness because that would only build sympathy for that witness and his identification. Okay. SJC says those are reasonable trial strategies. What I want to know is whether you're arguing that those were not reasonable trial strategies. Well, I think that when trial counsel said he didn't want to risk making a poor impression on the jury by attacking this veteran who has PTSD, he, and the SJC as well, failed to recognize the fact that trial counsel made this statement without seeing the records. He had no idea the relationship. Okay. All right. That's your argument. Okay. Thank you. That's time. Thank you, counsel. Attorney Pumphrey, you can go ahead and mute your audio and video at this time. And, Attorney Thornton, please reintroduce yourself on the record to begin. You have a two-minute rebuttal. Good morning again, Gabriel Thornton, for the respondent appellate, Nelson Owls. I want to take issue with my sister's characterization that the witness misled the jury about his mental illnesses. He did not, and I would encourage the court to look at the entirety of the witness's testimony and to compare it to the records that were produced later and to compare it to the proffered expert testimony, Dr. Hidalgo's report. And the witness describes the history of his mental illness, his symptoms, that essentially the symptoms had not been bothering him in the lead-up to the shooting. He hadn't visited therapists for roughly five months before the shooting. But then describes for the jury that immediately after the shooting, the morning after, he visits a therapist. He has a psychiatric hospitalization later that year. So he did fairly describe his conditions and his symptoms for the jury, and it matches what's in the records that were produced later and the proffered expert testimony that the doctors report on the witness's mental illnesses. And as for whether there was a reasonable application of Strickland, as the court knows, under Strickland we consider whether the evidence of the jury did not here, quote, alter the entire evidentiary picture. And here the records that were produced later did not alter the entire evidentiary picture because there was already significant evidence before the jury about the witness's mental illnesses and their potential effect on the accuracy of the identification of the petitioner. If this court has no further questions, I ask it to reverse the decision of the district court, and I would rest. Thank you. Thank you, counsel. That concludes argument in this case. Attorney Thornton and Attorney Pumphrey are welcome to please mute and leave the meeting at this time.